## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

TRIPLE7VAPING.COM, LLC,

         Plaintiff,

                                    **Case No. 16-CV-80855**

vs.

SHIPPING and TRANSIT, LLC,

         Defendant.

_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Shipping and Transit ("Shipping" or "Defendant"), through undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby move for dismissal of Plaintiff's Complaint. In support, Defendant would state as follows:

## I.    INTRODUCTION

On May 31, 2016, the Plaintiff filed the instant action against Defendant seeking declaratory judgment, including monetary damages, alleging violations of Maryland Commercial Law §11-601, as well as declaratory judgment that four of Defendants Patents are invalid and not infringed by Plaintiff. As will be discussed at length herein, there is no case or controversy that exists between the parties. Defendant provided a signed covenant not to sue in favor of Plaintiff[1] stating that infringement did not exist and Defendant would not file any lawsuit based on any of Plaintiff's technologies. Therefore, the Complaint should be dismissed.

On January 6, 2016, Defendant sent Plaintiff a pre-suit communication ("Notice Letter") alleging the likelihood of infringement of claims within Defendants patent(s), as well as alleging

---

[1] Please find a copy of the Signed Affidavit attached hereto as Exhibit A

damages for past usage. (Dollard Decl.) at ¶7. Specifically, Defendant's letter focused on Plaintiff's claims that it tracked a customer's package, and more importantly that Plaintiff automatically notified their customers of the status of their order/package[2] "_All Shipments include a tracking number_ from USPS, which is **_automatically emailed to you once your package has been processed_** and your tracking info will be emailed to you also be retained in your login account history."[3] _Id_. at ¶7.

On January 10, 2016, Defendant's representative Edward Turnbull attempted to contact Plaintiff via email to their customer service, providing a copy of the Notice Letter. (Dollard Decl.) at ¶8.The following day, the undersigned was contacted by Plaintiff Jason Cugle to discuss the notice letter sent the previous day. During this conversation, Mr. Cugle stated that his shipping system was built by Noleeo Web Design ("Noleeo"). Following this conversation, undersigned contacted Defendant to inquire as to whether Noleeo was licensed. Defendant confirmed they were not. (Dollard Decl.) at ¶9.

On January 13, 2016, Mr. Turnbull followed up with Mr. Cugle via email, eventually having a telephone conference. During this conversation, Mr. Cugle stated that his ordering system was completely "manual" and that the assertions on his website regarding automatic notifications were false. After this discussion, Mr. Turnbull followed up with an email confirming that Plaintiff's system was "manual" and that Defendant would need Plaintiff to sign an affidavit confirming that Plaintiff's system was manual. (Dollard Decl.) at ¶10.The following day, undersigned sent Mr. Cugle a proposed affidavit for his review. (Dollard Decl.) at ¶11.

---

[2] The patents within Defendant's portfolio and associated claims therein address the use of many different technologies, methods and systems. The status messaging-to-customers, including the creation of different status messages sent to customers/users and the actual sending of messages to customers is an automated (not manual), element and or step of the associated claims within the portfolio. To be clear, a person manually typing or creating each message individually is a manual part, element and or step (this is not automated). A person sending messages manually, such as manually selecting one or more addresses, populating message body and subject line, and sending messages by a keystroke entry, is manual and not automated.

[3] www.triple7vaping.com (January 5, 2016)

The affidavit was simple and straightforward, and notwithstanding the negative description within the complaint, nowhere did undersigned state that comments/edits from Plaintiff were not welcome. The affidavit was simply to confirm Mr. Cugle's own statements that the assertions on the Plaintiff's website regarding automated email notifications were false and that Plaintiff's order system was "manual" and not automated. (Dollard Decl.) at ¶11.

Despite the inferences within the Complaint, the affidavit did contain the following language "I understand that by signing below that I am subjecting myself to perjury in the event any of the above statements are incorrect", a commonly used provision within affidavits. The provisions purpose is to make sure the affiant understands that he/she is attesting to is truthfulness of the statements contained therein. If the affiant is being truthful regarding their statements he/she should have no issue signing.

Defendant, has settled several matters, including instances where statements regarding a systems capabilities are exaggerated in publically available information,  through an affidavit which included the perjury provision without objection.

On January 20, 2016, Mr. Turnbull sent an email to Mr. Cugle attempting to get status on the affidavit. Unfortunately, he received no response. (Dollard Decl.) at ¶12. In the interim, Defendant again reviewed Plaintiff's website and found that the statements regarding automated email notifications were still present, despite Mr. Cugle's own admission that the statement was false. *Id.* at ¶12.

Without a response to the affidavit attesting to manual notifications, as well as the continued presence of automatic email notification claims, undersigned prepared a draft

complaint[4], which was forwarded to Mr. Cugle by Mr. Turnbull on January 29, 2016. (Dollard Decl.) at ¶13. That same day, Mr. Cugle finally responded to Mr. Turnbull's previous email regarding the affidavit saying he would review and get back with Defendant. (Dollard Decl.) at ¶15.

On February 9, 2016, Mr. Turnbull followed up with Mr. Cugle regarding the affidavit. Mr. Cugle responded by saying that they (Plaintiff) don't have the system we (Defendant) claim they (Plaintiff) do. However, the false statement regarding automated email notifications was still present on Plaintiff's website. Mr. Turnbull responded that Defendant still needed the affidavit signed since the claims of automated email notification were still present. An alternative resolution, a covenant not to sue, was offered in exchange for a lump sum payment of $10,000.00, if Mr. Cugle was not interested in signing the affidavit. (Dollard Decl.) at ¶16.

Sometime after this exchange, Defendant again reviewed Plaintiff's website and found that the false and misleading statements, as admitted to by Mr. Cugle in previous conversation, regarding *automated email notifications had been removed*. As a result of removing these statement(s) from Plaintiff's website, Defendant determined that obtaining an affidavit or pursuing an infringement action was not warranted, and closed its file. (Dollard Decl.) at ¶18.

It was not until Plaintiff filed the present lawsuit that Defendant was even aware that a controversy still existed between the parties, as it has closed its file months before. (Dollard Decl.) at ¶19.

---

[4] The complaint was never filed.

It's important for the Court to note, whom Plaintiff is represented by. Specifically, Electronic Frontier Foundation ("EFF") co-counsel for Plaintiff, who is on a self proclaimed crusade against US Inventors, such as Defendant, who are seeking licenses to their innovations.

This motive becomes clear in an article published the same day as the present litigation was filed. The article, entitled "It's time to shut down the most prolific patent troll in the country"[5] appears on EFF's website, in which EFF and co-counsel proclaim that they are handling this matter pro bono, as well as seeking out other potential litigants "Have you recently been sued by Shipping and Transit or received a demand letter? Contact info@eff.org?"

The real issue here is, what is EFF, and counsel working with EFF, telling or not telling potential clients like Mr. Cugle? Are they explaining the full ramifications of bringing forth an action (ie the potential exposure of attorney fees if the matter is unsuccessful) or are these litigants being used a means to an end for EFF. Clearly, Mr. Cugle and potentially other unknown individuals/companies are being used as a pawn in EFF's crusade.

Defendant only brings the court's attention to this fact because any controversy that may have existed between Plaintiff and Defendant ceased when Plaintiff stated that their ordering system was "manual", thereby admitting that the statement(s) contained on their website regarding automated email notification were false and misleading, and then removing said statements regarding automatic shipment status messaging emails from their site.

Thus, without any controversy existing between the Parties, it appears that Mr. Cugle has been convinced by EFF to pursue this action so that it's self proclaimed crusade against US Inventors seeking licensing for their technology could continue.

---

[5] Please find a copy of the article attached here to as Exhibit B: https://www.eff.org/deeplinks/2016/05/its-time-shut-down-most-prolific-patent-troll-country

Upon reviewing the Complaint undersigned contacted Plaintiff's counsel to discuss the basis of their allegations further, since no controversy existed between the parties. Undersigned explained that it had closed its file months before because no controversy existed after Mr. Cugle admitted that his shipment status messaging system was "manual" and removed the false and misleading statement(s) regarding automated email notifications from Plaintiff's website. (Dollard Decl.) at ¶20.

However, with the authority of Defendant, undersigned did offer to resolve the matter by providing a Covenant Not to Sue ("CNS") in favor of Plaintiff. Counsel responded that her client was not likely to accept, but that she would present it. (Dollard Decl.) at ¶21.

On June 13, 2016, Plaintiff's counsel followed up with an email asking undersigned to put Defendant's offer in writing pursuant to "California Rules." (Dollard Decl.) at ¶22. Over the next week undersigned had several discussions with Defendant regarding the CNS. However, prior to having an opportunity to provide a written CNS, Plaintiff's counsel responded via email on June 17, 2016, stating "We have conveyed your offer of a covenant not to sue for past conduct to our client, and they have declined." (Dollard Decl.) at ¶23.

On June 20, 2016, undersigned sent Plaintiff's counsel an email stating "Julie, thank you for your email. To clear up any confusion from our conversation last Monday, and for settlement purposes only under FRE 408, attached please find a signed Covenant Not to Sue by my client for all past, present and future activities of your client. Please forward the attached CNS to your client for discussion." (Dollard Decl.) at ¶24. Two days later, on June 22, 2016, Plaintiffs counsel responded stating "Our client has already rejected this offer when you made it before and has not changed his mind." (Dollard Decl.) at ¶25.

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The U.S. Supreme Court has set forth the legal standard for addressing a motion to dismiss under Rule 12(b)(6) in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562.  The Court stated that, [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, … a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 55; see also Baraka v. McGreevy, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusions couched as factual allegations.")  Thus, for a complaint to withstand a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)…" Twombly, 550 U.S. at 555.

The U.S. Supreme Court has emphasized that, when addressing the sufficiency of a civil complaint, a court must distinguish factual contentions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  When evaluating a motion to dismiss for failure to state a claim, a district court must conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  Id.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim

for relief."  Id.  Put another way, a complaint must do more than allege the plaintiff's entitlement to relief.  The complaint must "show" such an entitlement with its facts.  Id.

A complaint will be dismissed unless it "contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Id.  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

## III.    ARGUMENT

### A)    The Court lacks Subject Matter Jurisdiction to hear this matter since no case or controversy exists between the parties and thus dismissal is appropriate:

The Federal Circuit in *SuperSack*, made it clear that "a patentee defending against an action for declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d at 1054, 1058 (Fed. Cir.1995) (citing to *Spectronics*, 940 F.2d at 636-38, 19 USPQ2d at 1549-51).[6] The *SuperSack*  court also stated that "the actual controversy must be extant at all stages of review, not merely at the time the complaint is filed" and the burden as it relates to the matter herein is on Plaintiff to "establish that jurisdiction over its declaratory judgment action existed at, and has continued since, at the time the [counterclaim] was filed." *Id* at 1058 (alteration in original) (internal quotations omitted).

---

[6] *see also Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340-1347-48 (Fed. Cir. 2007) (finding *no case or controversy to support declaratory judgment jurisdiction* where patentee withdrew its infringement claims and *covenanted not to sue the defendant for future acts*)(emphasis added); *Microchip Technology, Inc. v. Chamberlin Group, Inc.,* 441 F.3d 936, 943 (Fed. Cir. 2006) (vacating district court's summary judgment of patent invalidity entered after the *patentee covenanted not to sue the declaratory judgment plaintiff because the district court lacked subject matter jurisdiction at that point*)(emphasis added)

To determine whether a case or controversy exists in a declaratory judgment action, the Supreme Court in *MedImmune* stated, a "definite, concrete, touching the legal relations of parties having adverse legal interests; and be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts" *MedImmune, Inc. v. Genetech, Inc.,* 549 US 118 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 US 227 (1937).) The court went a step further finding that a court should inquire "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MD. Cas. Co. v. Pac. Coal & Oil Co.,* 312 US 270, 273 (1941)).

In *Super Sack*, the patentee, filed a complaint for patent infringement against the Defendant, whom denied infringement and counterclaimed for declaratory judgment. The case proceed through several years of discovery and motion practice, until the patentee filed a Motion to Dismiss "unconditionally agree[ing] not to sue Chase for infringement as to the any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* The trial court granted patentee's motion and dismissed the matter.

Defendant appealed arguing the patentee's "promise not to sue...[was] not memorialized in a covenant, is too indefinite...fail[ing] to cover future products at all." *Id.* The Federal Circuit upheld the decision finding that "...it is clear that the trial court, fulfilling its obligation as the first custodian of its own jurisdiction, dismissed the case for lack of actual controversy as required by Article III." [7] *Id.* The court also rejected the argument regarding future acts "the

---

[7] *Hyloft, Inc. v. Jiangsu Sainty Shengtong IMP,* Case No. CV-07-5819, 2008 WL 4184633 (C.D. Cal. 2008) the patentee provided a "Covenant Not to Sue in which the patentee promised not to assert against the defendant any infringement claim based on the patents in suit with respect to

residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity." *Id.*

Thus, a patentee, such as Shipping, can put an end to a patent infringement case by covenanting not to sue the once accused infringer (ie Triple7) by providing a covenant not to sue to an accused infringer, the patentee eliminates any case or controversy that may have existed and effectively divesting a court of subject matter jurisdiction.

Here Defendant provided Plaintiff with a CNS shortly after litigation was filed, and before a judicial determination of non-infringement[8] promising not to assert any claims of infringement against the Plaintiff, thereby eliminating any case or controversy. Defendant has not filed litigation nor is there any pending litigation claiming infringement against Plaintiffs.

Defendant has stated repeatedly herein, Plaintiff does not infringe the Defendants patents and no case or controversy exists. Therefore, this Court should act in the same way many *Hyloft* court did and dismiss Plaintiffs claims for declaratory relief.

### B)    <u>The Maryland Act is Preempted by Federal Law:</u>

In Count IX, Plaintiff alleges that Defendant has violated Maryland Commercial Law§11-1601 ("Maryland Act"). Specifically, Plaintiff alleges that "Shipping and Transit has asserted in bad faith, and continues to assert in bad faith, that Plaintiff's infringe the Patents-in-

---

any previous or current product". Ultimately, the Court dismissed  the infringement claims and counterclaims for invalidity, finding that it was "divested of power under Article III to determine whether the defendant was entitled to declaratory relief on its counterclaims." *Id.*

[8] see *Benitec Australia, Ltd.,* 495 F.3d 1340, 1346 (Fed.Cir. 2007)(determining that even though the patentee acknowledged lack of infringement...when it moved to dismiss its infringement claims, *absent an adjudication on the issue of infringement, the covenant not to sue removed the controversy over the defendants counterclaims*) (emphasis added); *Super Sack,* 57 F3d at 1059 (holding a covenant not to sue, filed after more than five years and a full discovery phase-*but before any determination by the court on the issue of infringement*-removed from the field of controversy sufficiently actual to confer jurisdiction over defendants declaratory judgment counterclaims) (emphasis added); *Medimmune II,* 535 F. Supp. 2d at 1066 (noting that, with respect to the timing of a covenant, *the only factor that matter under the Federal Circuit's apparent bright line rule is whether a ruling on noninfringement has been reached*)(emphasis added)

Suit. Shipping & Transit's bad faith assertion of patent infringement violates the Act for several reasons" (DE1, ¶225).

Count IX should be dismissed on two grounds: 1) Plaintiff is no longer a Maryland Corporation with standing to seek the relief sought, and 2) The Maryland Act is pre-empted by Federal Law.

### 1) **Plaintiff is no longer a Maryland Corporation with standing to seek the relief sought:**

First, Count IX is simply an attempt by Plaintiff to further their "crusade" to harass Defendant, cause them unnecessary litigation expenses, intimidate them into ceasing their business, look good to their subscribers in the hopes of increasing their donation base, and continue their "crusade" against US Investors seeking licensing for their intellectual property.

The fact that Plaintiff is not even eligible to bring forth the present action highlights the notion that this matter is simply an opportunity for EFF to further it's "crusade" against entities like Defendant.

Plaintiff, by its own admission, is no longer a valid Maryland Corporation, "Triple7 was terminated as a Maryland limited liability company and January 6, 2016." Plaintiff argues that despite their dissolved status, they can still file suit, relying upon Maryland Law §4A-908(b), "Triple7 continues to exist as a legal entity capable of bringing suit in order to do ***all acts required to wind up its business and affairs.''*** (emphasis added) (DE 1, ¶13).

However, Plaintiff omits the is the full language of §4A-908(b),:

> (b) Winding up. -- Notwithstanding the filing of articles of cancellation, the limited liability company *continues to exist for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required to liquidate and wind up its business and affairs*. (emphasis added)

The relief sought by Plaintiff here is twofold, one, Declaratory judgment against Defendant, which does not, even by the broadest definition possible, fall under "winding up" as defined by §4A-908(b), and two, money damages under the Maryland Act.

The purpose of §4A-908(b) is to allow a dissolved/terminated company to continue to exist for some period of time after being dissolved/terminated, in order to pay off/satisfy or discharge any debts and obligations, as well as "collecting and distributing its assets, _and all other acts required to liquidate and wind up business and affairs_." §4A-908(b) (emphasis added). Nowhere in the language of §4A-908(b) does it allow for a dissolved corporation to seek out affirmative relief.

The parties herein have no debts between one another, Defendant is not owed any money or have any debts in its favor against Plaintiff, nor can Plaintiff argue the same, and any controversy that did exist between them ceased months prior to this litigation. And even if any controversy still existed (which it does not), there is no way the pursuit of any alleged controversy would be considered a winding up of business affairs. Furthermore, there is no possible argument that any relief that the Plaintiff seeks herein would allow it to "...liquidate and wind up its business and affairs." §4A-908(b).

## 2) <u>The Maryland Act is pre-empted by Federal Law:</u>

Second, the Maryland Act is pre-empted by Federal law, and as a result must be dismissed.

"If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." _Hunter Douglas, Inc. v. Harmonic Designs, Inc._ 153 F.3d 1318,

1335 (Fed. Cir. 1998). What's more is Courts have consistently held that patent holders have the right to send communications regarding the likelihood of infringement, "...make its [patent holder] rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability." *Va. Panel Corp. v MAC Panel Co.,* 133 F.3d 860, 870 (Fed. Cir. 1997)[9].

Federal Courts, including the US Supreme Court and US Court of Appeals, have made it clear that sending letters regarding a person or entities patent rights is protected by not only the US Constitution but US Patent law as well. "A patentee shall have remedy by civil action for infringement of his patent." 35 USC §281.  Up holding this right, Courts have consistently protected the ability of a patentee to "make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability." *Va. Panel Corp. v MAC Panel Co.,* 133 F.3d 860, 870 (Fed. Cir. 1997); see also *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.,* 362 F.3d 1367, 1374-1375 ("the federal patent laws thus bar state-law liability for communications concerning alleged infringement so long as those communications are not made in bad faith).

By asserting their rights through pre-suit communication a patentee is protected from State laws that aim to take away those rights, "we have held that federal patent law preempts state law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."  *id.* at 1374[10]. *Globetrotter*

---

[9] *see also Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("A patentee that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers"); *Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38 ("Patents would be of little value if infringers of them could not be notified  of the consequences of infringement"); *Concrete Unlimited, Inc. v. Cementcraft, Inc.,*776 F.2d at1539 ("patent owner has the right to...enforce its patent, and that includes threatening alleged infringers with suit")

[10] see also  *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1367 (5th Cir. 1983)("If litigation is in good faith, a token of that sincerity is a warning  that it will be commenced and a possible effort to compromise the dispute. This is the position taken by most courts that have considered the question)

went on to state that "our sister circuits, almost without exception, have applied the *Noerr*

protections to pre-litigation communications." *id.* at 1376.

Recently in *Activision TV, Inc.* addressing a Nebraska Statute, similar to the Maryland

Act found that "as a matter of law that the state law claims are preempted, and the court further

finds that the defendants have failed to produced any evidence of objectively and subjectively

baseless claims and bad faith ." *Activision TV, Inc.; MPHJ Technology Investments, LLC v. Jon*

*Bruning, et al*, US Dist. Ct. Neb., 813-CV- 00215, Memorandum Order DE 189, Sept. 2, 2014.

Preemption can be overcome only by a showing of bad faith, "Federal patent law bars the

imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show

that the patent holder acted in bad faith." *Hunter Douglas, Inc. v. Harmonic Designs, Inc.,* 153

F.3d 1328, 1336 (Fed. Cir. 1998)[11]. In order to show bad faith *Globetrotter*, quoting *Professional*

*Real Estate*[12], stated "lawsuit must be objectively baseless in the sense that no reasonable litigant

could realistically expect success on the merits. If an objective litigant could conclude that the

suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,*

and an antitrust claim is premised on the shame exception must fail." *id.* at 1376.

Thus, in order to avoid preemption, the movant, in this matter Plaintiff, must show by

clear and convincing evidence that Defendant acted in an "objectively and subjectively baseless"

manner. [13]

Plaintiff's argues that Defendant failed to comply with the Maryland Act by not

conducting a pre-suit investigation, such that they have no reasonable basis to conclude that any

---

[11] *see id.* at 1374 ("to avoid preemption, bad faith must be alleged and ultimately proven, even if bad faith is not otherwise and element of the tort claim")
[12] *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 US 49, 57, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)
[13] *Globetrotter* citing to *Golan v. Pingel Enter., Inc.,* 310 F.3d 1360, 1371 (Fed.Cir.2002)"to show bad faith in Pingels actions, Golan must offer clear and convincing evidence that Pingel had no reasonable basis to believe that the [accused infringing device] infringed Pingel's patents." *id.* at 1377.

of Plaintiff's products infringe Defendant's patents. As "support" Plaintiff argues Defendant did not perform any reasonable pre-filing investigation to determine a basis for infringement and failed to comply with the provisions contained in the Maryland Act.

Plaintiff's arguments that the Notice Letter was legally baseless are unsupported attorney argument, based on hearsay and conclusory assumptions. What's more is Plaintiff makes these allegations despite receiving claims charts in the Notice Letter. Speaking directly on this, Courts have found:

> *Reasonable minds can differ as to claim construction positions* and losing constructions can nevertheless be non-frivolous. But, there is a threshold below which a claim construction is "so unreasonable that no reasonable litigant could believe it would succeed" see iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011) (emphasis added)

In the present matter Defendants conducted a reasonable pre-suit investigation that the likelihood infringement existed, and Plaintiff has failed to show that Defendants positions are "so unreasonable that no reasonable litigant could believe it would succeed" Id..[14]

Prior to the Notice Letter being sent, Defendant, as it does in every investigation of infringement went through a conclusive and extensive process to determine that infringement existed, wherein the inventor does an analysis of the potential companies infringement by reviewing all available public information concerning a potentially infringing system including the company's website. [15] (Dollard Decl.) at ¶4.

---

[14] "presumption that the assertion of infringement of a duly granted patent is made in good faith" see iLor, LLC v. Google, Inc.
[15] In the context of patent infringement claims, where claimants may have very limited access to information prior to conducting discovery, courts will evaluate a claimant's pre-filing investigation in light of the evidence available at the time of filing. See Intamin, Ltd. v. Magnetar Techs. Corp., 483 F.3d 1328, 1338 (Fed. Cir. 2007); Hoffman-LaRoche, Inc. v. Invamed, Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000).

Following the Defendant's (ie Inventors) analysis the matter is then passed on to the attorney, who reviews the companies systems, again through publicly available information to determine, based on their research in comparison to their knowledge and understanding of the patents, as well as the claims, if infringement exists. (Dollard Decl.) at ¶5.

If the likelihood of infringement exists, the Attorney drafts a Notice Letter to the company alerting the Company to the potential infringement.[16] (Dollard Decl.) at ¶6. The notice letter includes the system(s) Defendant feels are infringing, along with claims charts, and a detailed history of the patents and the inventor. Furthermore, the Notice Letter, as the one in this matter did, includes a provision referencing a State's Bad Faith Infringement Act, if applicable, " This Letter has been sent making every effort to comply with Maryland's Patent Abuse Prevention Act. *If any additional information is required please let us know in writing*." (Emphasis added) (Dollard Decl.) at ¶7.

Once the Notice Letter is completed Defendant attempts to make contact with the Company to discuss the allegations and potential resolution. The investigation of Plaintiff's system(s) was no different. (Dollard Decl.) at ¶7.

In the instant case, Defendants conducted a review of Plaintiff's systems and concluded they likely infringed Defendant's patented technology. Specifically, Defendant found that Plaintiff claimed to offer tracking services to its clients, and that it's ordering system provided automated email notifications "*All Shipments include a tracking number* from USPS, which is ***automatically emailed to you once your package has been processed*** and your tracking info will

---

[16] The Federal Circuit and U.S. Supreme Court have held that sending pre-suit letters is a necessary component of enforcing patent rights so Defendant's claim to the contrary is null and void.  See Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."); see also Virtue v. Creamery Pkg. Mfg. Co., 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal.").

be emailed to you also be retained in your login account history"[17]. Such capabilities likely infringe claims within Defendants patents.

Defendant's then forwarded the potential infringer to Counsel for his review, and thereupon Counsel for Defendant's conducted a review of Plaintiff's systems, based on publically available information. Upon confirming that Plaintiff's systems likely infringed, Counsel drafted the Notice Letter for the inventor to review and subsequently forwarded it to Plaintiffs on January 6, 2016, requesting a response within thirty (30) of receipt. (Dollard Decl.) at ¶7.

On January 10, 2016, Defendant's representative Edward Turnbull attempted to contact Plaintiff via email to their customer service, providing a copy of the Notice Letter. (Dollard Decl.) at ¶8. The following day, the undersigned was contacted by Plaintiff Jason Cugle to discuss the notice letter sent the previous day. During this conversation, Mr. Cugle stated that his shipping system was built by Noleeo Web Design ("Noleeo"). Following this conversation, undersigned contacted Defendant to inquire as to whether Noleeo was licensed. Defendant confirmed they were not. (Dollard Decl.) at ¶9.

On January 13, 2016, Mr. Turnbull followed up with Mr. Cugle via email, eventually having a telephone conference. During this conversation, Mr. Cugle stated that his ordering system was completely "manual" and that the assertions on his website regarding automatic notifications were false. After this discussion, Mr. Turnbull followed up with an email confirming that Plaintiff's system was "manual" and that Defendant would need Plaintiff to sign an affidavit confirming that Plaintiff's system was manual. (Dollard Decl.) at ¶10. The following day, undersigned sent Mr. Cugle a proposed affidavit for his review. (Dollard Decl.) at ¶11.

---

[17] www.triple7vaping.com (January 5, 2016)

As discussed previously, there were several back and forth's between the parties trying to reach an appropriate remedy. Eventually, Plaintiff removed the false and misleading statements, as admitted to by Mr. Cugle,  regarding *automated email notifications had been removed*. As a result of removing these statement(s) from Plaintiff's website, Defendant determined that obtaining an affidavit or pursuing an infringement action was not warranted, and closed its file.[18] (Dollard Decl.) at ¶'s 12-17.

At no point in time during any conversations between the parties did Plaintiff, Mr. Cugle or any representative of Plaintiff ever express confusion over the issues relayed in the Notice Letter, nor did anyone on Plaintiff's behalf make a request to Defendant to provide any further information[19]. In fact, Mr. Cugle was the one who admitted the statements that his system provided automated emails was false, and that the entire ordering system was "manual", thereby showing a clear understanding of the issues put forth in the Notice Letter.

Plaintiff's arguments seem to rely upon *their opinion* that Defendant did not conduct a pre-suit investigation, offering no actual evidence that Plaintiff did not. Essentially, without any evidence that Defendant didn't conduct an analysis, Plaintiff wants the Court to simply accept their *opinion*  that Defendant did not, which fails to meet the heavy burden upon Defendant.

The fact that Plaintiff may not agree with what Defendant's position is or feel that it is not sufficient for a pre-filing investigation, does not matter.[20] Unless Plaintiff can show by clear and

---

[18] A lawsuit was never filed against Plaintiff, money was never collected from Plaintiff, and Plaintiff never retained counsel in time frame they were dealing with Defendant
[19] Maryland Commercial Law §11-1603(b)(1)(ii) "the target requested the information described in item (i) of this paragraph, and the person failed to provide the information within reasonable period of time;
[20] In *Q-Pharma* the Court stated that "claim interpretation is not always an exact science, and it is *not unusual for parties to offer competing definitions of even the simplest claim language*. In this case, however, it is not for us to determine whether Q-Pharma's pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous." Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295 (Fed. Cir. 2004)(emphasis added).

convincing evidence that Defendant acted "objectively and subjectively baseless", Federal Law is not preempted, and Plaintiff cannot proceed with a claim under the Maryland Act.[21]

Plaintiff has presented no evidence that would tend to show that Defendant has in fact acted in "bad faith" ie that Defendant had no reasonable basis to believe that Plaintiff infringed the patent in suit, but only offers their opinion that Plaintiff doesn't believe they infringe which falls woefully short of proving that Defendant acted in an "objectively and subjectively baseless" manner.[22]

Without any evidence to prove Defendant acted "objectively and subjectively baseless" the Maryland Act should be preempted and Plaintiff should be prevented from seeking relief under this Act.

## CONCLUSION

WHEREFORE, based on all of the above reasons, Plaintiffs respectfully request that the Court grant all aspects of this Motion, enter an Order dismissing Plaintiff's entire complaint with Prejudice together with all other relief the Court deems just and proper in this instance.

Dated: June 30, 2016          Respectfully submitted,

      /s/ Jason P. Dollard
JASON P. DOLLARD, FBN: 0649821
jdollard@jpdesq.com
Leslie Robert Evans & Associates, PA
214 Brazilian Avenue, Suite 200

---

[21] *id* at 1377 "Our decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment. The federal patent laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation. In addition, the same First Amendment policy reasons that justify the extension of *Noerr* immunity to pre-litigation conduct in the context of federal antitrus law apply equally in the context of state-law tort claims." see also *ClearPlay, Inc. v. Nissim Corp., 2011 WL 3878363 *8-9 (S.D. Fla. 2011)* (the court determined that federal patent law preempted the state-law claim of violation of Florida's Deceptive and Unfair Trade Practices Act)

[22] *id* at 1377 "Accordingly, the objectively baseless standard of *Professional Real* Esate applies to state-law claims based on communications alleging patent infringement, such as those in this case. A Plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."

Palm Beach, FL 33480
Telephone: (561) 832-8322
Facsimile: (561) 832-5722
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 30, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day, via email on the counsel listed below.

**Julie S. Turner**
Turner Boyd, LLP
702 Marshall Street
Suite 640
Redwood City, CA
650-521-5933
Email: turner@turnerboyd.com
*ATTORNEY  TRIPLE7VAPING.COM, LLC and JASON CUGLE*
*PRO HAC VICE*


**Vera Ranieri**
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109
Email: vera@eff.org
*ATTORNEY  TRIPLE7VAPING.COM, LLC and JASON CUGLE*
*PRO HAC VICE*

**Matthew S. Sarelson**
Kaplan Young & Moll Parron
600 Brickell Avenue
Suite 1715
Miami, FL 33141
305-330-6090
Email: msarelson@kymplaw.com
*ATTORNEY  TRIPLE7VAPING.COM, LLC and JASON CUGLE*