## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Case No. 16-CV-80855-DMM

TRIPLE7VAPING.COM, LLC
and JASON W. CUGLE,

      Plaintiffs,

vs.

SHIPPING & TRANSIT LLC,

      Defendant.

_____/

### [PROPOSED] FIRST AMENDED COMPLAINT FOR
### VIOLATION OF MARYLAND COMMERCIAL LAW § 11-1601 *ET SEQ.*

Plaintiffs, TRIPLE7VAPING.COM, LLC ("Triple7") and JASON W. CUGLE ("Cugle"), collectively Plaintiffs, by and through their undersigned counsel, hereby sue Defendant, SHIPPING & TRANSIT LLC, formerly known as ArrivalStar S.A. and Melvino Technologies Limited, ("Shipping & Transit"), and in support, allege as follows:

### NATURE OF THE LAWSUIT

1.      This is an action for violation of Maryland Commercial Law § 11-601 *et seq*.

2.      Plaintiffs seek a finding that Shipping & Transit violated Maryland Commercial Law § 11-1601 *et seq*. by sending a demand letter in bad faith.

3.      Specifically, Plaintiffs seek a judgment that four patents allegedly owned by Shipping & Transit were asserted in bad faith against Plaintiffs, in violation of Maryland Commercial Law § 11-601 *et seq*. The four patents Plaintiffs allege were asserted in bad faith are (1) U.S. Patent No. 7,400,970 ("the '970 Patent"); (2) reexamined U.S. Patent No. 6,904,359 ("the '359 Patent"); (3) U.S. Patent No. 6,763,299 ("the '299 Patent"); and (4) U.S. Patent No. 6,415,207 ("the '207 Patent") (collectively, the "Patents-In-Suit").

4.      Copies of the '970 Patent, the '359 Patent, the '359 reexamination certificate, the '299 Patent, and the '207 Patent are attached hereto as Exhibits A-E, respectively.

5.      Plaintiffs seek this relief because on or about January 6, 2016, Shipping & Transit sent a letter (the "Demand Letter") to "Triple7Vaping.com, LLC" in which Shipping & Transit demanded Triple7 pay a substantial licensing fee for licensing of the Patents-In-Suit. A copy of the Demand Letter is attached as Exhibit F.

6.      As explained below, Shipping & Transit's allegations of infringement were also directed at Cugle's products and services as provided through www.Triple7Vaping.com, which is run as a sole proprietorship.

## PARTIES

7.      Plaintiff Cugle is a natural person residing at 7659 Beth Noelle Court, Pasadena, Maryland.

8.      Cugle is a citizen of Maryland. *See* Exhibit DD.

9.      Plaintiff Triple7 was a limited liability company formed on August 26, 2015 under the laws of Maryland, with its principal place of business at 7659 Beth Noelle Court, Pasadena, Maryland. *See* Exhibit G.

10.     Triple7's sole member was Cugle, a citizen of Maryland.

11.     Triple7 was terminated as a Maryland limited liability company on January 6, 2016, and Cugle was designated its resident agent for one year after termination. *See* Exhibit H.

12.     Pursuant to Maryland law, Triple7 continues to exist as a legal entity capable of bringing suit in order to do all acts required to wind up its business and affairs. *See* MD Corp. and Assoc. § 4A-908(b).

2

13.     Although Triple7 was intended to operate "www.Triple7Vaping.com" ("the Website"), it does not operate the Website, and Cugle has operated the Website as a sole proprietorship before, during, and after the legal existence of Triple7.

14.     Cugle continues to operate the Website as a sole proprietorship.

15.     On information and belief, defendant Shipping & Transit is a Florida limited liability company with its principal place of business located at 711 Southwest 24th Avenue, Boynton Beach, Florida.

16.     On information and belief, and according to Shipping & Transit's filings with the Florida Secretary of State, Shipping & Transit's sole members are Peter Sirianni and Martin Kelly Jones. *See* Exhibit BB.

17.     On information and belief, Peter Sirianni is a citizen of Florida or Pennsylvania. *See* Exhibit BB, EE.

18.     On information and belief, Martin Kelly Jones is a citizen of Florida. *See* Exhibit BB.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over Plaintiffs' claims for violation of Maryland Commercial Law § 11-1601 *et seq.* pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     Maryland Commercial Law. § 11-1605 provides for the recovery of actual damages, costs, attorneys' fees, and exemplary damages up to the greater of $50,000 or three times the total of damages, costs, and fees.

21.     As discussed in further detail below, actual damages, court costs, fees, and exemplary damages awardable under Maryland Commercial Law § 11-1605 here exceed $75,000.

22.     Specifically, as of the date of the filing of the original complaint, the amount-in-controversy was at least $118,136.

23.     This Court has personal jurisdiction over Shipping & Transit because it is domiciled in Florida, has its principal place of business in Florida, and has filed a number of lawsuits in this district, thereby voluntarily subjecting itself to this Court's jurisdiction.

24.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Shipping & Transit resides in this judicial district, is subject to personal jurisdiction in this judicial district, regularly conducts business in this judicial district, maintains its business records in this judicial district, and/or because a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

**I.     Triple7, Cugle's Website Triple7Vaping.com, and Associated Business Practices**

25.     The Website, www.Triple7Vaping.com, is an Internet storefront selling goods related to electronic cigarettes.

26.     The Website began public operation on or about May 5, 2015.

27.     The fact that the Website did not exist on or before May 5, 2015 can be determined quickly and easily, for free, by typing "whois triple7vaping.com" into a terminal window of any computer connected to the Internet. *See* Exhibit I.

28.     The majority of the orders placed on the Website are mail order, in that they are delivered by a carrier service.

4

29.     Cugle uses the United States Postal Service ("USPS") to ship all packages ordered as mail order, unless a specific request is made by the customer to use a different carrier.

30.     When a customer places an order, Cugle prepares a package for shipment and takes it to the local USPS post office.

31.     USPS provides a tracking number as part of its service.

32.     Cugle also prepares an email to the customer that includes the tracking number.

33.     The email to the customer informing them that their package was shipped and providing the tracking number for the package is sent in plain text. It does not contain any "links."

34.     The email is not sent automatically. Cugle manually composes and sends the email to the customer after the postage for the package is purchased.

35.     After this email is sent, Cugle does not send any more emails to the customer that include a tracking number as part of his regular practice, unless specifically requested from the customer.

36.     If a customer does email Cugle, any subsequent emails and/or responses are not sent automatically. Cugle manually composes and sends any response email to the customer.

37.     Cugle does not provide its customers with any way to track the shipment of their packages other than providing them with a plain text tracking number for entry at a third-party website.

38.     Customers wishing to track a package must visit USPS.com or the website of the related carrier if a different carrier was requested, in order to track a package.

## II.       Shipping & Transit's Business

39.       On information and belief, Shipping & Transit is the successor-in-interest to ArrivalStar S.A. and Melvino Technologies Limited, which are themselves formerly known as ArrivalStar Inc. (collectively, "ArrivalStar").

40.       Specifically, Shipping & Transit claims it is formerly known as ArrivalStar S.A. and Melvino Technologies Limited.

41.       On information and belief, Shipping & Transit's current members, Peter Sirianni and Martin Kelly Jones, were associated with each ArrivalStar entity.

42.       On information and belief, Shipping & Transit owns and/or controls a portfolio of at least 34 patents.

43.       ArrivalStar and Shipping & Transit have collectively alleged infringement of one or more of the Patents-in-Suit in over 300 lawsuits against over 650 defendants, in actions filed across the United States. Upon information and belief, ArrivalStar and Shipping & Transit have sent demand letters to thousands of additional parties regarding the Patents-in-Suit and have obtained numerous licensing agreements without filing lawsuits.

44.       On information and belief, Shipping & Transit makes no products and sells no services, and Shipping & Transit's sole business is to enforce the Patents-in-Suit and other patents it owns and/or controls.

## III.      Shipping & Transit's Patents

45.       Shipping & Transit alleges it owns all rights, title and interest in, and/or has standing to sue for infringement of United States Patent Number 7,400,970 ("the '970 patent"), entitled "System and Method for an Advance Notification System for Monitoring and Reporting Proximity of a Vehicle," issued July 15, 2008. A copy of the '970 patent is attached hereto as Exhibit A.

6

46.     The '970 patent expired no later than July 1, 2013.

47.     On information and belief, Shipping & Transit is aware that the '970 patent has expired.

48.      Shipping & Transit alleges it owns all rights, title and interest in, and/or has standing to sue for infringement of United States Patent Number 6,904,359 ("the '359 patent"), entitled "Notification System and Methods with User-Definable Notifications Based Upon Occurrence of Events," issued June 7, 2005. A copy of the '359 patent is attached hereto as Exhibit B.

49.     The '359 patent was the subject of an *inter partes* reexamination at the United States Patent and Trademark Office. A Reexamination Certificate was issued on May 25, 2010 and is attached hereto as Exhibit C.

50.     The '359 patent expired no later than August 27, 2013.

51.     On information and belief, Shipping & Transit is aware that the '359 patent has expired.

52.     Shipping & Transit alleges it owns all rights, title and interest in, and/or has standing to sue for infringement of United States Patent Number 6,763,299 ("the '299 patent"), entitled "Notification systems and methods with notification based upon prior stop locations," issued July 12, 2004. A copy of the '299 patent is attached hereto as Exhibit D.

53.     The '299 patent expired no later than May 18, 2013.

54.     On information and belief, Shipping & Transit is aware that the '299 patent has expired.

55.     Shipping & Transit alleges it owns all rights, title and interest in, and/or has standing to sue for infringement of United States Patent Number 6,415,207 ("the '207 patent"),

entitled "System and Method for Automatically providing vehicle status information," issued

July 2, 2002. A copy of the '207 patent is attached hereto as Exhibit E.

56.     The '207 patent expires on March 1, 2020.

### 1.   The Alleged "Inventions" of the '970 Patent, the '359 Patent, and the '299 Patent

57.     Shipping & Transit previously characterized its patents as "generally relat[ing] to

systems and methods for providing electronic messages to users concerning the travel status *of*

*vehicles*." *See* Exhibit J, at 2 (emphasis added).

58.     The '359 patent and the '299 patent note alleged deficiencies in the prior art,

specifically pointing to the deficiencies in package tracking systems such as those used by UPS

and FedEx:

> Additionally, individuals already try to project the arrival of a vehicle or package
> by online package tracking services provided by commercial delivery companies,
> such as the United Parcel Service (UPS), Federal Express (FED-X), and others.
> Although traditional methods used in determining when a vehicle are to arrive at a
> stop is effective in some cases, a more precise method using a pre-warning
> message can be more helpful in providing accurate information. Currently, such
> vehicles, in order to ensure delivery of all packages in the same day, keep loads at
> a lower capacity in order to compensate for waiting times encountered at a
> percentage of vehicle stops when customers react slowly to their arrival.

'359 patent, Exhibit B, col. 2, ll. 20-33; '299 patent, Exhibit D, col. 2, ll. 20-33.

59.     The '970 recites a similar alleged deficit in the prior art methods:

> Yet another example is in the commercial overnight package delivery industry,
> wherein packages are delivered on a tight schedule. Customers oftentimes wait on
> delivery of important time-critical packages not knowing precisely when the
> delivery will occur. A system informing the customer of the precise arrival time is
> desirable in order to improve customer service and to allow the customer to better
> rely on the estimated arrival time of the delivery.

'970 patent, Exhibit A, col. 2, ll. 32-39.

8

60.     The '359 and '299 patents disclose and claim only a "more precise method" of notifying a user of an approaching vehicle using a "pre-warning message." '359 patent, col. 2, l. 26; '299 patent, col. 2, l. 26; *see also* '970 patent at col. 2. ll. 36-39 ("A system informing the customer of the precise arrival time is desirable in order to improve customer service and to allow the customer to better rely on the estimated arrival time of the delivery."). This message is triggered when a vehicle is a particular distance, location, or time period—"for example a number of minutes or seconds"—away from arriving at a destination "so that the user can adjust his/her schedule and avoid arriving too early or too late." '359 patent, col. 2, ll. 20-42; '299 patent, col. 2, ll. 20-42; *see also* '970 patent at col. 2, ll. 42-43 ("particular time period (for example, a certain number of minutes or seconds) away from arriving at a destination").

### 2.     The Alleged "Inventions" of the '207 Patent

61.     The '207 patent begins by noting that in the prior art:

[I]t is possible for users to call a central processing station to obtain information on the status of a vehicle of interest. For example, it is possible for a user to call an airline or a bus depot and find out whether an airplane or bus is on or off schedule. In some situations a human operator at the processing station (e.g., the airline or bus depot) receives the call from the user who asks the operator for information regarding the status of a particular vehicle.

'207 patent, Exhibit E, col. 1, ll. 22-29.

62.     The '207 patent further notes that in the prior art:

In other situations, the status information is automatically provided to the user after the user has submitted a status information request, thereby eliminating the need of human interaction at the processing station. . . . The computer then automatically retrieves information pertaining to the status of the vehicle identified by the user's inputs and provides this information to the user.

'207 patent, Exhibit E, col. 1, ll. 33-46.

63.     The '207 patent identifies what it views as the "problem" in the prior art, namely that "provid[ing] either the operator or the computer with information identifying which vehicle is of interest to the user is time consuming and burdensome." '207 patent, col. 1, ll.47-49.

### 3.     Relationship between the Patents-in-Suit

64.     The '970 patent, the '359 patent, and the '299 patent all claim the benefit of U.S. Pat. No. 5,400,020 through a series of continuations, continuations-in-part, and/or divisionals.

65.     Below is a diagram explaining the relationship between the '970 patent, the '359 patent, and the '299 patent, as claimed on the faces of the '970 patent, the '359 patent, and the '299 patent:



66.     Although the '207 patent claims similar subject matter to the '970 patent, the '359 patent, and the '299 patent, there is no formal relationship between the '207 patent and the other Patents-in-Suit. Consequently, the '970 patent, the '359 patent, and the '299 patent are prior art to the '207 patent.

67.     Although the '970 patent claims priority to U.S. Pat. 6,748,318, the application which led to the issuance of the '970 patent was never co-pending with the application which led to U.S. Pat. 6,748,318. As a result, U.S. Pat. 6,748,318, among other patents, is prior art to the '970 patent.

**IV.     The Demand Letter and Shipping & Transit's Failure to Investigate Infringement or Alternatively, Willful Disregard of the Facts Unearthed During an Investigation**

68.     Shipping & Transit and/or ArrivalStar's pattern and practice of asserting patents against entities that do not practice the patented technology to obtain nuisance value settlements is evident in the Demand Letter they sent to Triple7 accusing Cugle's Website of infringement.

69.     On or about January 6, 2016, Shipping & Transit sent the Demand Letter to Triple7 at 7659 Beth Noelle Court, Pasadena, MD 21122. The letter was also sent via email to the email address info@triple7vaping.com, owned by Cugle. *See* Exhibit F.

70.     The Demand Letter sought a license for the '207 patent and damages for past usage of the '970, '359, and '299 patents. *See* Exhibit F, at 1.

71.     Shipping & Transit demanded a license fee of $25,000 for a license to the Patents-in-Suit, and only the Patents-in-Suit. *See* Exhibit F, at 14.

72.     Shipping & Transit has no basis to allege Triple7 or Cugle had any knowledge of the Patents-in-Suit prior to the receipt of the Demand Letter.

73.     Shipping & Transit did not disclose that three of the four allegedly infringed patents had expired in 2013.

74.     A reasonable person would not have alleged infringement of patents that expired in 2013 against a website and company that did not exist until 2015 without further inquiry.

75.     On information and belief, Shipping & Transit did not perform any substantive, reasonable investigation prior to sending the Demand Letter alleging patent infringement.

76.     Alternatively, if Shipping & Transit did conduct an investigation at any point, its assertion of infringement occurred despite facts plainly contrary to any claim of infringement.

77.     A reasonable investigation makes clear Triple7 and Cugle do not infringe any of the Patents-in-Suit.

78.     Had Shipping & Transit conducted even a cursory investigation into Cugle's practices, Shipping & Transit would have learned at least the following, all of which indicate that Triple7 and/or Cugle could not have infringed any of the expired patents prior to expiration:

      a.     The Website did not exist prior to May 5, 2015.[1] *See* Exhibit I.

      b.     Triple7 did not exist prior to August 26, 2015. *See* Exhibit K.

79.     Shipping & Transit knew or should have known how to use WHOIS information, as ArrivalStar previously received such information in litigation relating to ArrivalStar's claims of infringement. *See* Exhibit L.

80.     Shipping & Transit accused, inter alia, USPS tracking services as infringing the Patents-in-Suit. *See* Exhibit F.

81.     Shipping & Transit did not disclose in the Demand Letter that ArrivalStar had previously sued the United States for infringement based on the activities of the United States

---

[1] Cugle previously operated his business via the website Triple7TradingCo.com. That website was created on December 7, 2014. In either event, neither website existed before three of the four Patents-in-Suit expired.

Postal Service, and had covenanted not sue the United States for any claims relating to United States Patent Nos. 6,278,936, 6,714,859, 6,904,359, 7,089,107, 7,400,970, or any other patents that may issue claiming priority from those patents. *See* Exhibit M.

82.     Shipping & Transit knew Plaintiffs' services used services provided by the United States Postal Service and accused those services, despite having granted a license to USPS for at least two of the Patents-in-Suit.

83.     A reasonable person would not have accused licensed services as infringing the Patents-in-Suit.

84.     Shipping & Transit did not disclose in the Demand Letter that, on information and belief, Shipping & Transit and/or ArrivalStar do not require a significant number of its licensees to mark products with the numbers of the Patents-in-Suit, thus preventing Shipping & Transit's ability to recover damages for any infringement occurring prior to Shipping & Transit's Demand Letter. *See* 35 U.S.C. § 287. *See* Exhibit N, at 3 (stating that as of July 14, 2008, only a single licensee was obligated to mark the licensed patent numbers on its licensed product); *see also* Exhibit O (on information and belief, typical licensing agreement presented to targets by ArrivalStar and/or Shipping & Transit).

85.     A reasonable person would not have alleged infringement of patents that expired in 2013 without reasonably investigating when the allegedly infringing products and/or services first came into existence.

86.     A reasonable person would not have alleged infringement of patents based on products and services that can only be used to track packages when each claim allegedly infringed relates to tracking vehicles.

### 1.     Allegations Regarding Infringement of the '970 Patent

87.     In the Demand Letter, Shipping & Transit accused Triple7 and Cugle's Website and/or services of infringing Claim 1 of the '970 patent.

88.     Claim 1 of the '970 patent claims as follows:

1. A computer based notification system, comprising:

> means for enabling communication with a user that is designated to receive delivery of a package;

> means for presenting one or more selectable options to the user, the selectable options including at least an activation option for instigating monitoring of travel data associated with a vehicle that is delivering the package to the user;

> means for requesting entry by the user of a package identification number or package delivery number, each pertaining to delivery of the package;

> means for identifying the vehicle based upon the entry;

> means for requesting entry by the user of contact information indicating one or more communication media to be used in connection with a notification communication to the user;

> means for monitoring the travel data; and

> means for initiating the notification communication pertaining to the package via the one or more communication media, based upon the travel data.

89.     Shipping & Transit's allegations of infringement of Claim 1 are baseless.

90.     For example, Shipping & Transit alleges that:

> a.     A "shipment tracking update link" related to a *package* meets the
>
> limitation of "monitoring of travel data associated *with a vehicle*."
>
> (emphasis added);

b.    A "order number and link," "account number and link," and a "shipment tracking number and link" meet the limitation of "means for requesting entry *by the user* of a package identification number" and the limitation of "means for identifying *the vehicle* based upon the entry" (emphasis added); and

c.    "Package tracking" meets the limitation of "means for monitoring *the travel data*" associated *with a vehicle.* (emphasis added).

91.    On information and belief, Shipping & Transit willfully misreads and intentionally misrepresents the scope of the '970 patent to claim infringement by products and services that it knows are not covered by its claims so that it may extract nuisance value settlements.

### 2.    Alleged functionality of Cugle's System and what would have been discovered by a reasonable investigation, relating to the '970 patent

92.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not provide a "shipment tracking update link within the shipment confirmation email." A reasonable investigation would have shown that emails sent by the accused "system" are plain text emails that do not contain any links.

93.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not send any emails that contain an "order number and link," "account number and link," or a "shipping tracking number and link." A reasonable investigation would have shown that emails sent by the accused "system" are plain text emails that do not contain any links.

### 3.   Allegations Regarding Infringement of the '359 Patent

94.   In the Demand Letter, Shipping & Transit accused Triple7 and Cugle's Website of infringing Claim 41 of the '359 patent.

95.   Shipping & Transit did not disclose that the '359 patent had been reexamined by the Patent Office and that the allegedly infringed claim, original claim 41, had been amended during reexamination. *See* Exhibit C.

96.   Shipping & Transit did not allege infringement of the amended claim of the '359 patent and instead claimed infringement of the previous, now amended, original version of Claim 41 that no longer exists.

97.   Amended Claim 41 of the '359 patent claims as follows (additional limitations not found in original claim 41 in italics):

41. A notification system, comprising:

(a) means for permitting a user to predefine one or more events that will cause creation and communication of a notification relating to the status of a mobile vehicle in relation to a location, comprising:

(1) means for permitting the user to electronically communicate during a first communication link with the notification system from a user communications device that is remote from the notification system *and the vehicle whose travel is being monitored, the notification system being located remotely from the vehicle*; and

(2) means for receiving during the first communication link an identification of the one or more events relating to the status of the vehicle, wherein the one or more events comprises at least one of the following: distance information specified by the user that is indicative of a distance between the vehicle and the location, location information specified by the user that is indicative of a location or region that the vehicle achieves during travel, time information specified by the user that is indicative of a time for travel of the vehicle to the location, or a number of one or more

stops that the vehicle accomplishes prior to arriving at the location; and

(b) means for establishing a second communication link between the system and the user upon occurrence of the one or more events *achieved by the mobile vehicle during the travel*.

98. In a previous litigation, a Special Master construed the term "location information specified by the user that is indicative of a location or region that the vehicle achieves during travel" to mean "location information identified by the user for indicating a location (other than the location) or region that the vehicle achieves during travel prior to arriving at the location." *See* Exhibit P, at 48.

99. The Special Master rejected ArrivalStar's proposed construction that would have allowed the "location region that the vehicle achieves during travel" to include arrival of the vehicle at the user's location (*i.e.* delivery address). *Id.* at 49.

100. Even if Claim 41 still existed in its original, unamended form, as alleged by Shipping & Transit, Shipping & Transit's allegations of infringement of Claim 41 are baseless.

101. For example, Shipping & Transit alleges that:

a. Entering a delivery address meets the limitation of "permitting a user to predefine one or more events that will cause creation and communication of a notification relating to the status *of a mobile vehicle in relation to a location*" (emphasis added); and

b. Receiving a customer's delivery address meets the limitation of "one or more events relating to the status *of a vehicle*" as it is "indicative of a location or region that the vehicle achieves during travel" (emphasis added).

17

102.     On information and belief, Shipping & Transit willfully misreads and intentionally misrepresents the scope of the '359 patent in order to claim infringement by products and services that it knows are not covered by its claims so that it may extract nuisance value settlements.

### 4.     Alleged functionality of Cugle's System and what would have been discovered by a reasonable investigation, relating to the '359 patent

103.     Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not notify customers "when the shipment is picked up by a courier (vehicle)." A reasonable investigation would have shown that the only emails sent are those that confirm the placement of an order and provide a tracking number, both of which are in plain text.

### 5.     Allegations Regarding Infringement of the '299 Patent

104.     In the Demand Letter, Shipping & Transit accused Triple7 and Cugle's Website of infringing Claim 79 of the '299 patent.

105.     Claim 79 of the '299 patent claims as follows:

79. A system, comprising:

> means for maintaining delivery information identifying a plurality of stop locations;

> means for monitoring travel data associated with a vehicle in relation to the delivery information;

> means for, when the vehicle approaches, is at, or leaves a stop location:

>> determining a subsequent stop location in the delivery information;

>> determining user defined preferences data associated with the stop location, the user defined preferences data including a distance between the vehicle and the subsequent stop that corresponds to when the party wishes to receive the communication; and

> sending a communication to a party associated with the subsequent
> stop location in accordance with the user defined preferences data
> to notify the party of impending arrival at the subsequent stop
> location.

106.    In a previous litigation, a Special Master construed the term "impending arrival"

of the related U.S. Patent 6,748,318 to mean "when a vehicle is on an approach to a stop and has

not yet arrived at a stop." *See* Exhibit P, at 22.

107.    The Special Master rejected ArrivalStar's proposed construction that would allow

messages to be sent long before the vehicle arrived at a stop location. *Id.* at 24-25.

108.    Shipping & Transit's allegations of infringement of Claim 79 are baseless.

109.    For example, Shipping & Transit alleges that:

    a.    Different users' delivery addresses meet the limitation of a "plurality of
stop locations";

    b.    The delivery of packages to different customers' addresses meets the
limitation of "means for, when a vehicle approaches, is at, or leaves a stop
location: determining *a subsequent stop location* in the delivery
information" (emphasis added);

    c.    A shipment notification and associated delivery address meets the
limitation of a "user defined preferences data *including a distance* between
the vehicle and the subsequent stop that corresponds to when the party
wishes to receive the communication"; and

    d.    A shipment notification and associated delivery address also meets the
limitation of "sending a communication to a party associated with the
subsequent stop location in accordance with the user defined preferences

data to notify the party *of impending arrival at the subsequent stop location*."

110.    On information and belief, Shipping & Transit willfully misreads and intentionally misrepresents the scope of the '299 patent in order to claim infringement by products and services that it knows are not covered by its claims so that it may extract nuisance value settlements.

**6.      Alleged functionality of Cugle's System and what would have been discovered by a reasonable investigation, relating to the '299 patent**

111.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not "monitor[] shipments by vehicles picking up, in transit and delivering products to customer addresses." A reasonable investigation would have shown that the accused "system" does not provide this functionality. Logging into a user account only provides at most a plain text tracking number that must then be copied and pasted into the USPS website to learn of the shipment's status.

112.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not "include the delivery date within the message." A reasonable investigation would have shown that the message provides at most a plain text tracking number that then must be copied and pasted into the USPS website to learn of the expected delivery date, if that functionality is provided by USPS at all.

113.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not "determine[] when a package is scanned on a courier vehicle (is at the loading dock)." A reasonable investigation would have shown that the "system" at most provides a plain text tracking number that then must be copied and pasted into

20

the USPS website to determine when a package is scanned on a courier vehicle, if that

functionality is provided by USPS at all.

### 7.      Allegations Regarding Infringement of the '207 Patent

114.    In the Demand Letter, Shipping & Transit accused Triple7 and Cugle's Website

of infringing Claims 5 and 7 of the '207 patent.

115.    Claim 5 of the '207 patent claims as follows:

> 5. A system for monitoring and reporting status of vehicles, comprising:
>
> means for maintaining status information associated with a vehicle, said status information indicative of a current proximity of said identified vehicle;
>
> means for communicating with a remote communication device, said means for communicating including a means for receiving caller identification information automatically transmitted to said communicating means;
>
> means for utilizing said caller identification information to automatically search for and locate a set of said status information; and
>
> means for automatically retrieving and transmitting said set of said status information.

116.    Claim 7 of the '207 patent claims as follows:

> 7. The system of claim 5, wherein said caller identification information is an e-mail address.

117.    Shipping & Transit's allegations of infringement of Claims 5 and 7 are baseless.

118.    For example, Shipping & Transit alleges that:

> a.      A shipment confirmation meets the limitation of being "status information
>
> associated *with a vehicle*, said status information indicative of *a current*
>
> *proximity of [an] identified vehicle*" (emphasis added); and

b. A user email address that is "auto-populated" in a log in field, where the customer later has to "search for and locate vehicle and status information" meets the limitation of "means for utilizing said caller information to *automatically search for and locate* a set of said status information".

119. On information and belief, Shipping & Transit willfully misreads and intentionally misrepresents the scope of the '207 patent in order to claim infringement by products and services that it knows are not covered by its claims so that it may extract nuisance value settlements.

**8. Alleged functionality of Cugle's System and what would have been discovered by a reasonable investigation, relating to the '207 patent**

120. Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not "maintain[] the status of orders and more importantly, when those orders are fulfilled, shipped, in transit and delivered." A reasonable investigation would have shown that the accused "system" sends emails containing plain text tracking numbers only upon shipment of the package, and the tracking number then must be copied and pasted into the USPS website to determine the delivery status of a package. A reasonable investigation would have shown that no emails are sent that update the status of a delivery.

121. Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused system does not "provide[] updated vehicle delivery information." A reasonable investigation would have shown that the accused "system" at most sends emails with plain text tracking numbers that then must be copied and pasted into the USPS website to

22

determine the delivery status of a package. A reasonable investigation would have shown that no emails are sent that update the status of a delivery.

122.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not "place[] information on the customer's computer for automatically identifying this customer, when this customer returns to the Triple7 website." A reasonable investigation would have shown that any cookies set by the Website to identify the current user do not persist beyond the browser session. A reasonable investigation would have shown that the cookies cannot be used to automatically identify a customer returning to the Website after closing the browser as the cookies no longer exist.

123.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the alleged "system" does not use cookies "to help customer[s] automatically log in or particularly log in" nor does it allow for "every time the user goes back to the Triple7 website, the browser retrieves and sends this file to the website's server." A reasonable investigation would have shown that cookies set by the Website do not allow for automatic login, and a reasonable investigation would have shown that any cookies set by the Website that identify the current session do not persist beyond the session.

124.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused "system" does not use "auto-populated email fields," "automatically identify" users, or "automatically log[] in" users via browser cookies.

125.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused system does not provide "links within email confirmations and notifications." A reasonable investigation would have shown that emails sent by the accused "system" are plain text emails and do not contain any links.

126.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the accused system does not provide "links [that] provide product and shipment information." A reasonable investigation would have shown that emails sent by the accused "system" are plain text emails and do not contain any links.

127.    Contrary to Shipping & Transit's allegations, a reasonable investigation would have shown that the Website's customers are not automatically logged into their account and consequently, there is no "automatic log in [that] retrieves and transmits vehicle and shipment status information (i.e. users are not required to enter account in whole or in part, information)." A reasonable investigation would have shown that the accused "system" does not provide for any automatic login whatsoever, and in any event the accused "system" at most provides a plain text tracking number that then must be copied and pasted into the USPS website to determine the delivery status of a package.

**V.      Shipping & Transit's Further Correspondence and Communications with Cugle**

128.    On receiving Shipping & Transit's Demand Letter, on or about January 7, 2016, Cugle contacted Shipping & Transit to explain how his system did not process any orders "automatically" and did not provide the functionality Shipping & Transit alleged was infringing, including any automated links to shipping information.

129.    The fact that Cugle's communications with customers did not include any automated links would have been readily known to Shipping & Transit upon even the most cursory investigation.

130.    Even after Cugle told Shipping & Transit that nothing in his process was automated in the way claimed by the Patents-in-Suit, on information and belief Shipping & Transit again failed to investigate Cugle's products and services.

131.    On or about January 14, 2016, Shipping & Transit demanded that Cugle, as CEO of Triple7, sign an affidavit under penalty of perjury, attesting to the functionality of the Website. *See* Exhibit Q ("the Proposed Affidavit")

132.    The Proposed Affidavit required Triple7 to swear to not "own[ing], possess[ing] or us[ing] any . . . monitoring systems, . . . which have to do with the . . . status of cargo/ packages/people/vehicles/vessels/trains/planes/buses/etc." *See* Exhibit Q, at 2.

133.    The Proposed Affidavit also required Triple7Vaping.com, LLC to swear that "[i]n the last six years, no company has provided TRIPLE7 with any . . . monitoring systems, . . . which have to do with the . . . status of cargo/packages/people/vehicles/vessels/trains/planes/ buses/etc." *See* Exhibit Q, at 2.

134.    The Proposed Affidavit did not define what it meant by the term "monitoring system" or any other term in the affidavit.

135.    The Proposed Affidavit also required Triple7 to swear to having not used these undefined "systems" within the last six years, despite the fact that three of the four allegedly infringed patents expired in 2013.

136.    On January 20, 2016, Shipping & Transit demanded a "status" on Cugle's signing of the Proposed Affidavit.

137.    On January 29, 2016, Shipping & Transit sent an email to Cugle with the text, "Cule [sic], please see the attached complaint. I'm available to discuss, thanks." *See* Exhibit R.

138.    Attached to the email was a *draft* complaint that had not been filed with any court. *See* Exhibit S (the "Draft Complaint"). Shipping & Transit did not inform Cugle that the Draft Complaint had not been filed with any court.

139.    The Draft Complaint contained claims for direct infringement, contributory infringement, and induced infringement of the Patents-in-Suit.

140.    The Draft Complaint did not allege that Triple7 had any knowledge of the Patents-in-Suit prior to January 6, 2016.

141.    The Draft Complaint sought damages for infringement "from the date that Triple7's infringement began" despite the fact that such damages are not recoverable under 35 U.S.C. § 287 prior to actual knowledge of the Patents-in-Suit because neither Shipping & Transit nor its licensees marked any of the devices claimed in the Patents-in-Suit with any of the patent numbers.

142.    The Draft Complaint included claims for contributory infringement and induced infringement (collectively, "indirect infringement") of the expired '970, '359, or '299 patents despite the fact that those causes of action require Shipping & Transit show Triple7 knew of the patents when they were in force.

143.    Shipping & Transit has no basis to allege Triple7 knew of the Patents-in-Suit prior to January 6, 2016.

144.    Shipping & Transit has no basis to allege Triple7 knew of the '970, '359, or '299 patents prior to their dates of expiry.

145.    Shipping & Transit has no basis to allege that Triple7 practiced any of the alleged "inventions" of the '970, '359, or '299 patent prior to their dates of expiry.

146.    The Draft Complaint sought a permanent injunction "prohibiting further infringement of the patents at issue" and "specifically, *enjoining further use* of methods and systems that come within the scope of the" Patents-in-Suit despite the fact that three of the four

patents were and are expired, and thus Shipping & Transit has no rights to prevent practicing of expired patents now in the public domain. *Id.* at 4 (emphasis added).

147.    On information and belief, Shipping & Transit hoped that Cugle would believe that a complaint had been filed against the company in Federal District Court.

148.    On information and belief, Shipping & Transit hoped to extort a settlement out of Triple7 and/or Cugle by misrepresenting by omission that a Federal District Court complaint had been filed against Triple7.

149.    On information and belief, Shipping & Transit again failed to investigate Cugle's products and services or willfully ignored the results of that investigation prior to sending Cugle the Draft Complaint.

150.    Shipping & Transit's final communication to Cugle demanded a payment of $10,000 firm, or that Cugle "need[ed] to sign the affidavit Jason [Dollard, attorney for Shipping & Tranist] sent." *See* Exhibit CC.

**VI.    Further Evidence of Failure to Adequately Investigate Infringement Claims and Bad Faith Assertion of Patent Infringement**

151.    Further evidence of Shipping & Transit's failure to adequately investigate Cugle's products and services the fact that Shipping & Transit has asserted identical claims of infringement, with identical descriptions, against others. *See, e.g.*, Exhibit T.

152.    For example, in its claim charts accusing Jackthreads.com of infringing the Patents-in-Suit, Shipping & Transit alleged word-for-word (other than the name of the allegedly infringing party) the exact same allegations as those made against Triple7 and Cugle.

153.    On information and belief, Shipping & Transit and/or ArrivalStar has sent additional letters that contain the exact same allegations of infringement for one or more of the

Patents-in-Suit, and has done so in lieu of analyzing each allegedly infringing party's actual products and services.

154.    On information and belief, Shipping & Transit's demand letters are sent pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring (via an undeserved "settlement") its targets.

155.    On information and belief, ArrivalStar and Shipping & Transit have obtained thousands of licenses for their patents, not as a reflection of the merits of their claims of infringement or the validity of its patents, but rather due to their demands for nuisance value settlements far below the cost of litigation.

156.    Upon information and belief, Shipping & Transit, and previously ArrivalStar, has created a business model with the malicious intent to extort a substantial amount of money from accused infringers via a nuisance value settlement or license fee, such substantial amount of money being carefully selected by Shipping & Transit to be significantly less than the average cost of hiring an attorney to file dispositive motions and argue the same.

157.    Upon information and belief, Shipping & Transit has created a business model around knowingly sending demand letters and filing frivolous and meritless complaints of patent infringement against businesses, municipalities, and individuals with *de minimis* or no pre-filing investigation, claim chart preparation, comparison of the accused products or services to patent claims, or the like.

158.    For example, ArrivalStar previously asserted its patents against those it knew or should have known were licensed to engage in any allegedly infringing activities.

159.    As one example, ArrivalStar sent a demand letter to TheRealReal, alleging infringement based on the use of FedEx tracking functionality. *See* Exhibit U.

160.    ArrivalStar sent this letter despite having granted FedEx a license to all the allegedly infringed patents and despite TheRealReal's use of FedEx systems. *See* Exhibit V.

161.    The absence of any substantive pre-filing investigation conducted by Shipping & Transit prior to filing patent infringement complaints is also evident in the copycat complaints that Shipping & Transit has filed against multiple defendants. Although Shipping & Transit is required to identify the specific device or method used by each defendant they have sued that allegedly infringes its patents, Shipping & Transit instead alleges that multiple defendants are infringing the patents by using the identical "tracking and notification technologies within [their] 'ADVANCE SHIP NOTICE' and 'SHIPMENT CONFIRMATION EMAIL' services." *See, e.g.*, *Shipping & Transit v. Shutterfly, Inc.*, Case No. 9:16-cv-80190, Complaint (S.D. Fla. filed Feb. 5, 2016); *Shipping & Transit v. Pharmapacks, LLC*, Case No. 9:16-cv-80189, Complaint (S.D. Fla. filed Feb. 5, 2016); *Shipping & Transit v. CJ Pony Parts, Inc.*, Case No. 9:16-cv-80191, Complaint (S.D. Fla. filed Feb. 5, 2016); *Shipping & Transit v. Hats.com, LLC*, Case No. 9:16-cv-80091, Complaint (S.D. Fla. filed Jan. 19, 2016) (all containing identical allegations of infringement).

162.    On literally hundreds of occasions, Shipping & Transit and/or ArrivalStar have asserted patents against entities practicing technologies far afield from the patented technology. The Patents-in-Suit concern technology for monitoring and reporting the status of a vehicle. The purported advantages of this technology include the capability of notifying users "when an arrival of a particular vehicle at a predefined destination is imminent," and the ability to automatically process a user's request to automatically monitor a particular vehicle. Although the technology of the patents concerns methods and systems for vehicle status reporting systems, Shipping & Transit and/or ArrivalStar have asserted their patents, including the Patents-in-Suit,

against a wide swath of defendants, including companies, municipalities and government

agencies. The over 650 entities targeted by ArrivalStar and/or Shipping & Transit include a large

number of online retailers who do not have their own shipping operations but instead use

shippers such as FedEx and UPS, who are both fully-licensed under the Patents-in-Suit. These

online retailers include:

    a.      Makeup Geek, LLC

    b.      Chapel Hedware LLC

    c.      The Beauty Supply Warehouse, Inc.

    d.      Shutterfly, Inc.

    e.      Hats.com, LLC

    f.      ShoeZoo.com

    g.      Golfknickers.com

    h.      Zulily, Inc.

    i.      Urban Outfitters, Inc.

    j.      L.L. Bean

    k.      Gamestop

    l.      Target

    m.      Petsmart

    n.      Stride Rite Children's Group, LLC

    o.      Amain.com, Inc.

163.    Even though ArrivalStar and/or Shipping & Transit have filed over 300 lawsuits

relating to one or more of the Patents-in-Suit, no court has ever found any party to be infringing

the Patents-in-Suit as part of a decision on the merits. A review of the litigation history of

ArrivalStar and Shipping & Transit shows few, if any, substantive decisions by courts regarding the merits of ArrivalStar's and/or Shipping & Transit's claims of infringement and/or validity of the Patents-in-Suit.

164.    On information and belief, Shipping & Transit has a practice of securing settlement and/or licensing fees and dismissing cases before cases are decided on the merits, thus evading judicial determination of Shipping & Transit's patent rights.

165.    On information and belief, in its enforcement efforts, Shipping & Transit and/or ArrivalStar have knowingly made statements and assertions to one court that are inconsistent with statements, assertions, or findings made to or by another court or the United States Patent and Trademark Office.

166.    For example, in *ArrivalStar S.A. et al. v. WCAF Shipment Management*, Case No. 1:13-cv-20824 (S.D. Fla.), on May 1, 2013, ArrivalStar stated that claim 21 of the '359 patent was entitled to a priority date of May 18, 1993 based on the filing of U.S. Pat. App. 08/063,533. *See* Exhibit W, at 4.

167.    However, the Patent Office had previously found on July 22, 2008, during an *ex parte* reexamination, that the '359 patent was not entitled to claim priority to U.S. Pat. App. 08/063,533, despite a specific reference on the face of the '359 patent to that application. Instead, the Patent Office found that the earliest priority date to which ArrivalStar was entitled was May 6, 1997. *See* Exhibit X, at 8-9.

168.    Specifically, the examiner found that U.S. Pat. App. 08/063,533 application did not provide written description support under 35 U.S.C. § 112 for claim limitations pertaining to the "user communications device" that is part of each independent claim of the '359 patent. *See id.*, at 8.

169.    ArrivalStar successfully amended its claims, including claim 21, during reexamination and did not challenge or dispute the Patent Office finding that the earliest possible priority date for all claims of the '359 patent was May 6, 1997.

170.    As another example, in the same filing in *ArrivalStar S.A. et al. v. WCAF Shipment Management*, ArrivalStar stated that claim 1 of the '970 patent was also entitled to a priority date of May 18, 1993 based on the filing of U.S. Pat. App. 08/063,533, meaning the '970 patent expired no later than July 1, 2013. *See* Exhibit W, at 3-4; 35 U.S.C. § 154(a)(2) (patent expires "20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c), from the date on which the earliest such application was filed.); 35 U.S.C. § 154(b) (allowing the patent term to be extended in light of Patent Office delays).

171.    Despite previously claiming priority to U.S. Pat. App. 08/063,533 filed in 1993 and the specific reference that application on the face of the '970 patent, in *FTL Apparel, LLC v. Shipping & Transit LLC*, Case No. 3:16-cv-01453-WHO (N.D. Cal.) Shipping & Transit denied that the term of the '970 patent had expired. *Compare* Exhibit Y, at ¶ 73 (alleging '970 patent has expired) and Exhibit Z, at ¶ 73 (denying that the '970 patent has expired).

## 1.    Shipping & Transit's Association with Eclipse IP

172.    On information and belief, Peter Sirianni, a member of Shipping & Transit, is also associated with another patent owning company known as Electronic Communication Technologies, LLC f/k/a Eclipse IP, LLC (collectively, "Eclipse IP").

173.    Scott Horstemeyer, the named inventor of Eclipse IP's patents, was the prosecuting attorney for the Patents-in-Suit.

174. Eclipse IP and Shipping & Transit state the same address in Boynton, Florida, as their principle address.

175. Eclipse IP has filed over 100 patent infringement lawsuits.

176. On September 14, 2014, Judge Wu of the Central District of California invalidated claims from Eclipse IP's U.S. Patent Nos. 7,064,681, 7,113,110 and 7,119,716 for failure to claim patentable subject matter under 35 U.S.C. § 101. *See* Exhibit AA.

177. Judge Wu's decision is now final and non-appealable.

178. Eclipse IP's U.S. Patent No. 7,119,716, and in particular invalidated claims 41 and 43, is similar in scope and subject matter to the Patents-in-Suit.

179. On information and belief, Shipping & Transit has actual knowledge of Judge Wu's ruling invalidating certain claims from Eclipse IP's patents.

180. Shipping & Transit has continued to assert its patents despite the objectively high likelihood its patents are invalid for the same reason Eclipse IP's claims were invalidated.

**VII.     Plaintiffs Do Not Infringe and Have Not Infringed Any of the Patents-In-Suit**

181. As discussed above, and contrary to Shipping & Transit's assertions, Plaintiffs have not infringed and do not infringe any of the claims of the '970 patent under 35 U.S.C. § 271(a), (b), or (c), as alleged by Shipping & Transit.

182. As discussed above, and contrary to Shipping & Transit's assertions, Plaintiffs have not infringed and do not infringe any of the claims of the '359 patent under 35 U.S.C. § 271(a), (b), or (c) as alleged by Shipping & Transit.

183. As discussed above, and contrary to Shipping & Transit's assertions, Plaintiffs have not infringed and do not infringe any of the claims of the '299 patent under 35 U.S.C. § 271(a), (b), or (c) as alleged by Shipping & Transit.

184.    As discussed above, and contrary to Shipping & Transit's assertions, Plaintiffs have not infringed and do not infringe any of the claims of the '207 patent under 35 U.S.C. § 271(a), (b), or (c) as alleged by Shipping & Transit.

**VIII.    The Patents-in-Suit Are Invalid**

185.    Contrary to Shipping & Transit's assertions, the '970 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

186.    Specifically, the claims of the '970 patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101 as interpreted by the Supreme Court in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ("*Alice*").

187.    The inventions asserted against Triple7 claim an unpatentable abstract idea that is implemented by human beings using computers or user communications devices. The '970 patent purports to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel data. Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claims" into a patent-eligible invention. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. 10 (2012) ("*Mayo*"). "The mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice* 134 S. Ct. at 2358.

188.    Furthermore, each asserted claim is directed to technology similar to that found to be unpatentable subject matter by the Central District of California.

189.    Contrary to Shipping & Transit's assertions, the '359 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35 of the

United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

190.     Each asserted claim is invalid for the same reasons described in paragraphs 186-188.

191.     Contrary to Shipping & Transit's assertions, the '299 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

192.     Each asserted claim is invalid for the same reasons described in paragraphs 186-188.

193.     Contrary to Shipping & Transit's assertions, the '207 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

194.     Each asserted claim is invalid for the same reasons described in paragraphs 186-188.

195.     On information and belief, Shipping & Transit has a policy of immediately covenanting-not-to-sue any party that attempts to challenge the validity of the Patents-in-Suit in a court of competent jurisdiction.

IX.     **Plaintiffs were Damaged Due to Shipping & Transit's Baseless Allegations of Infringement**

196.     Because of Shipping & Transit's baseless allegations, Plaintiffs were damaged as Plaintiffs were required to divert resources from operating their business to addressing Shipping & Transit's claims of infringement. Specifically,

    a.      Plaintiffs spent numerous hours researching and reviewing Shipping &
Transit's allegations and corresponding with Shipping & Transit and/or
corresponding with their attorneys so as to be able to respond to
correspondence sent by the patent holder;

    b.      Plaintiffs would have spent this time on other things, such as their
business, had Shipping & Transit not made its claims of infringement.

197.    Because of Shipping & Transit's baseless allegations, Plaintiffs were damaged as
they incurred attorneys' fees in responding to correspondence sent by the patent holder, Shipping
& Transit. Specifically,

    a.      On or about January 13, 2016, Plaintiffs contacted the Electronic Frontier
Foundation in order to seek assistance in responding to the Demand
Letter;

    b.      On or about January 25, 2016, the Electronic Frontier Foundation began
informally advising Plaintiffs regarding the Demand Letter;

    c.      On February 3, 2016, a retainer agreement was signed, retroactive to
January 25, 2016 that formally engaged the Electronic Frontier Foundation
as counsel for Plaintiffs regarding the allegations of infringement made by
Shipping & Transit;

    d.      The Electronic Frontier Foundation engaged in a significant amount of
legal and factual research on Plaintiffs' behalf in order to advise Plaintiffs
on how to respond to correspondence sent by the patent holder;

    e.      Specifically, the Electronic Frontier Foundation reviewed the patents in
suit, investigated the patent's file histories, prior art, expiration dates, and

Shipping & Transit's prior representations, and compared the law and facts surrounding the results of this investigation to the products and services accused by Shipping & Transit of infringement in order to advise Plaintiffs as to how to respond to correspondence sent by the patent holder and the legal risks of various strategies, including whether Plaintiffs should sign an affidavit unilaterally prepared by Shipping & Transit and enforced through the penalty of perjury;

f.  The Electronic Frontier Foundation also prepared materials to either file a lawsuit or defend against any lawsuit being filed, made necessary by, among other things, Shipping & Transit's litigation history and that it had sent Plaintiffs a draft complaint;

g.  Between January 25, 2016 and February 9, 2016, Plaintiffs incurred at least $14,356 in legal fees due to the services of the Electronic Frontier Foundation.

h.  Plaintiffs would not have incurred these fees but for the allegations of infringement made by S&T.

198.  The last correspondence from Shipping & Transit was received on February 9, 2016.

199.  The last communication Plaintiffs received from Shipping & Transit demanded Plaintiffs pay $10,000 or "sign the affidavit Jason [Dollard, attorney for Shipping & Transit] sent." *See* Exhibit CC.

200.  Prior to the filing of this lawsuit, Shipping & Transit never abandoned its claims of infringement.

201.    Plaintiffs were damaged as a result, as Plaintiffs were required to incur the costs and fees associated with continuing to prepare for an imminent lawsuit from Shipping & Transit and/or filing a declaratory judgment action in order to determine the legal rights between the parties regarding the patents-in-suit. Specifically,

a.    Between February 10, 2016 and May 31, 2016, Plaintiffs incurred at least $15,178 in legal fees due to the services of the Electronic Frontier Foundation;

b.    Plaintiffs feared a lawsuit from S&T alleging infringement and/or wanted to be able to operate without fear of a lawsuit from S&T, incurred legal fees as a result;

c.    Services provided into further legal and factual investigation into the allegations of infringement made by Shipping & Transit, LLC and preparation for any lawsuit regarding the infringement or validity of the patents-in-suit comprised the vast majority of this time;[2]

d.    During this time, fees were also incurred for legal services provided by Turner Boyd and Kaplan Young & Moll Parrón.

e.    Plaintiffs would not have incurred these fees but for the allegations of infringement made by S&T.

---

[2] Facts and law regarding infringement or validity of the patents-in-suit is relevant to both Plaintiffs' original declaratory judgment claims and claim under Maryland state law, given that the declaratory judgment claims were subsumed within the Maryland state law claim.

202.    Between February 10, 2016 and May 31, 2016 Plaintiffs incurred damages and attorneys' fees as a result of Shipping & Transit's baseless allegations of infringement in the amount of at least $15,178.

203.    As of the date of the filing of the original Complaint, Plaintiffs were entitled to an award of damages of at least $14,356 of attorneys' fees incurred as a result of responding to correspondence sent by the patent holder, *see* Md. Comm. L. § 11-1605(b), and were also entitled to seek at least $15,178 in addition as either damages or an award of attorneys' fees, *see id.* at 11-1605(b) and (b)(1), and at least $88,602 in punitive damages for Shipping & Transit's violations of Maryland law, *id.* at 1605(b)(2)(ii) (court may award exemplary damages in the amount of "three times the total of damages, costs, and fees").

204.    As of the date of the filing of Plaintiffs' original complaint on May 31, 2016, Plaintiffs were entitled to seek an award of at least $118,136, as well as any equitable relief the court considers appropriate.

### COUNT I
### (BAD FAITH ASSERTION OF PATENT INFRINGEMENT IN VIOLATION OF MD. COMM. LAW § 11-1601 *ET SEQ.*)

205.    Plaintiffs hereby incorporate Paragraphs 1 through 204 set forth above as if fully set forth herein.

206.    In 2014, the Maryland Legislature amended Maryland Commercial Law § 11-1601 *et seq.*, with an Act entitled "Bad Faith Assertions of Patent Infringement" ("the Act").

207.    Maryland Commercial Law § 11-1603 sets forth several factors courts may consider as evidence of bad faith assertions of patent infringement, including: (1) failure to set forth in the demand letter the name and address of the patent owner or assignee and factual allegations concerning the specific areas in which the target's products, services, or technology infringe or are covered by the claims in the patent; (2) failure, before sending the demand letter,

to conduct an analysis comparing the claims in the patent to the target's products, services, or technology or failure to identify the specific areas in which the target's products, services, or technology were covered by the claims of the patent; (3) failure to provide the factual basis for infringement upon request; (4) the claim of patent infringement was without merit and the plaintiff knew or should have known that the assertion is without merit; (5) the claim or assertion of patent infringement is deceptive; (6) the person alleging infringement has previously filed or threatened to file one or more lawsuits based on the same or similar claim of patent infringement and a court found the person's assertion to be without merit; or (7) any other factor the court finds relevant.

208.    The Act creates a private right of action for targets of a bad faith assertion of patent infringement and authorizes courts to award as remedies equitable relief, damages, costs, fees (including reasonable attorneys' fees), and punitive damages in an amount equal to $50,000 or three times the total damages, costs, and fees, whichever is greater. *See* Md. Comm. L. § 11-1605.

209.    Shipping & Transit asserted in bad faith that Plaintiffs infringed the Patents-in-Suit. Shipping & Transit's bad faith assertion of patent infringement violated the Act for several reasons.

210.    As an initial matter, as discussed above, on information and belief Shipping & Transit failed to conduct an analysis comparing the claims of its patents to Cugle's products and services. On January 6, 2016, Edward Turnbull, a non-attorney licensing agent for Shipping & Transit, sent Cugle a claim chart in which he identified the following claims as representative claims of the Patents-in-Suit allegedly infringed by the Website: claim 1 of the '970 patent, claims 5 and 7 of the '207 patent, claim 41 of the '359 patent, and claim 79 of the '299 patent

(collectively, "the Representative Claims"). Yet none of Triple7 or Cugle's products and services actually practice the Representative Claims for at least the reasons set forth in Paragraphs 68-154 above. Shipping & Transit would have discovered this fact if they had performed an adequate investigation before sending their Demand Letter.

211.    Alternatively, if Shipping & Transit did conduct an investigation, as discussed above, it willfully ignored the evidence showing that Cugle does not infringe and has never infringed the Representative Claims.

212.    Shipping & Transit's assertion of patent infringement with respect to the '970 patent, the '299 patent, and the '359 patent also violates the Act because, as discussed above, these patents are unenforceable as they have expired. Had Shipping & Transit performed a reasonable inquiry into the legal merits of its claims before filing suit, it would have learned that the Website did not exist and Cugle did not ship products ordered through it until well after these patents had expired.

213.    Shipping & Transit's assertion of patent infringement with respect to the '970 patent and the '359 patent also violates the Act because, as discussed above, these patents were asserted against the United States and Shipping & Transit's predecessor in interest, ArrivalStar, covenanted not to sue the United States for any alleged infringement relating to the '970 patent and the '359 patent, making any alleged infringement by shipping via USPS immune from suit.

214.    Shipping & Transit's assertion of patent infringement with respect to the Patents-in-Suit also violates the Act because all of Shipping & Transit's claims relating to each of the Patents-in-Suit are barred by patent exhaustion, implied license, and legal estoppel in light of its covenant not to sue USPS.

215.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, in asserting its rights against Plaintiffs and other parties, Shipping & Transit has materially omitted information that would preclude assertion of its patents, including without limitation, failing to disclose that certain entities are licensed, thereby exhausting any rights Shipping & Transit may have.

216.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit willfully and unreasonably construes its patents and claims to read onto Cugle's products and services.

217.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit's licensing demand is not based on the value of the patents but rather the cost of litigation. On information and belief, Shipping & Transit chooses its licensing demands so as to be below the cost of even basic litigation and associated investigation.

218.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit asserted Claim 41 of the '359 patent that did not include the amendments to the patent claim that were added during reexamination.

219.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, on information and belief Shipping & Transit sent Triple7 the Draft Complaint without indicating that it was a draft and had not been filed in order to mislead Triple7 into believing that a lawsuit had actually been filed against it.

220.    Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit's Draft Complaint sought mislead Triple7 into

believing that Shipping & Transit was entitled to relief on expired patents that it categorically is not entitled to receive.

221.   Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit has made inconsistent statements to this Court and other tribunals regarding the scope of its claims, thereby denying the public the ability to rely on the patent's disclosure to determine whether or not the patent was legally and lawfully issued.

222.   Shipping & Transit's assertion of patent infringement also violates the Act because, as discussed above, Shipping & Transit has abused court process in order to receive settlement amounts vastly below the cost of litigating the merits.

223.   Additionally, Shipping & Transit's assertion of patent infringement with respect to all Patents-in-Suit is in bad faith and in violation of the Act because none of the claims of the Patents-in-Suit constitute patentable subject matter pursuant to 35 U.S.C. § 101. Each asserted claim is directed to technology similar to that found to be unpatentable subject matter by the Central District of California. Each asserted claim is likewise invalid for claiming unpatentable subject matter under 35 U.S.C. § 101 as interpreted by the Supreme Court in *Alice*.

224.   On information and belief, Shipping & Transit had actual knowledge of the ruling in the Central District of California, and knew, or should have known, that the Patents-in-Suit were invalid for the same reasons stated by the court in the Central District of California, and therefore knew, or should have known, that its assertion of infringement was without merit.

225.   Additionally, Shipping & Transit's assertion of patent infringement with respect to all Patents-in-Suit is in bad faith and in violation of the Act because Shipping & Transit reads

its patents in ways that encompass activities that the patents themselves admit is prior art and was well-known long before the purported "inventions" of the Patents-in-Suit.

226.    Shipping & Transit's bad faith assertion of patent infringement in violation of the Act is also evident from Shipping & Transit's and/or ArrivalStar's hundreds of baseless threats and lawsuits against targeted entities alleging the same or similar claims of infringement as the claims of infringement asserted here against Plaintiffs. Indeed, Shipping & Transit and/or ArrivalStar have filed more than 300 lawsuits alleging the same or similar claims of infringement in this Court alone, and almost 500 lawsuits nationwide. Upon information and belief, these frivolous lawsuits, and the demand letters that precede them, do not substantiate the factual basis for infringement, but instead seek only to leverage the high cost of patent litigation against the targets to obtain settlements for less money than it takes to litigate a patent infringement lawsuit.

227.    Shipping & Transit's violations of the Act have damaged Plaintiffs by, as discussed above, forcing Plaintiffs to spend time and energy addressing Shipping & Transit's unfounded claims, and diverting them from running their business.

228.    Shipping & Transit's violations of the Act have damaged Plaintiffs by, as discussed above, forcing Plaintiffs to incur the costs and attorneys' fees necessary to defend against the frivolous threats of patent infringement, including those incurred as a result of corresponding with Shipping & Transit.

229.    As provided by the statute, Plaintiffs are entitled to equitable relief, damages, costs, attorneys' fees, and punitive damages in an amount equal to $50,000 or three times the total damages, costs, and fees, whichever is greater.

230.    As of the date of the filing of the complaint, Plaintiffs are entitled to seek an award of at least $118,136, as well as any equitable relief the court considers appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

 A. That judgment be entered in favor of Plaintiffs and against Shipping & Transit;

 B. That Judgment be entered granting Plaintiffs its damages caused by Shipping & Transit's baseless allegations of infringement of the Patents-in-Suit.

 C. That Plaintiffs be awarded enhanced damages pursuant to Maryland Commercial Law § 11-1605, including their costs, reasonable attorneys' fees, and exemplary damages in the amount of $50,000 or three times Plaintiffs' costs, damages, and fees, whichever is greater;

 D. That Plaintiffs be awarded equitable relief pursuant to Maryland Commercial Law § 11-1605;

 E. That Plaintiffs be awarded their attorneys' fees and costs in this action pursuant to Maryland Commercial Law § 11-1605 *et. seq.*;

 F. That Plaintiffs be awarded such other and further relief as the Court may deem just and proper;


Dated: December 20, 2016    Respectfully submitted,

        /s/ Matthew Sarelson
        Matthew Sarelson
        Florida Bar No. 888281
        Derek Young
        Florida Bar No. 45227
        KAPLAN YOUNG & MOLL PARRÓN
        Brickell World Plaza
        600 Brickell Avenue, Suite 1715
        Miami, FL 33131
        Telephone: (305) 531-2424
        Fax: (305) 531-2405
        msarelson@kymplaw.com

        Vera Ranieri
        (admitted *pro hac vice*)

ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94114
Telephone: (415) 436-9333
Fax: (415) 436-9993
vera@eff.org

Julie Turner
(admitted *pro hac vice*)
TURNER BOYD
702 Marshall Street, Suite 640
Redwood City, CA 94063
Telephone: (650) 521-5930
Fax: (650) 521-5931
turner@turnerboyd.com

**Counsel for Plaintiffs Triple7Vaping.com,
LLC and Jason W. Cugle**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing along with all attachments

was served via CM/ECF on December 20, 2016 on all counsel or parties of record on the service

list below.

By: /s/ Matthew Sarelson
    Matthew Sarelson

## SERVICE LIST

JASON P. DOLLARD
jdollard@jpdesq.com
Leslie Robert Evans & Associates, PA
214 Brazilian Avenue, Suite 200
Palm Beach, FL 33480
Telephone: (561) 832-8322
Facsimile: (561) 832-5722
Counsel for Defendant Shipping & Transit, LLC